[File No. 6633.]

OSCAR E. ERICKSON, Commissioner of Insurance in and for the State of North Dakota, Respondent, v. A. E. THOMPSON, Superintendent of Public Instruction, Alvin Strutz, Attorney General, and John Moses, Governor, Constituting the Board of State Equalization Fund, John Moses, Governor, Berta E. Baker, State Auditor, James Gronna, Secretary of State, John Omland, State Treasurer, and John Graham, State Bank Examiner, Constituting the State Auditing Board, and Berta E. Baker, State Auditor, John Omland, State Treasurer, John Gray, State Tax Commissioner, and Math Dahl, Commissioner of Agriculture and Labor, Appellants.

(288 N. W. 462.)

Opinion filed November 14, 1939.

534

*Alvin C. Strutz,* Attorney General, and *P. O. Sathre,* Assistant Attorney General, for appellants.

*W. J. Austin,* for respondent.

MORRIS, J. The petitioner, the Commissioner of Insurance of the state of North Dakota, seeks a writ of mandamus requiring the defendants to transfer certain moneys from the State Equalization Fund to the State Hail Insurance Fund and enjoining the defendants from depleting the State Equalization Fund until such moneys are paid. A writ and restraining order in accordance with the prayer of the petitioner was issued by the district court. The effect of the action of the district court was to require a transfer to the Hail Insurance Fund of all the money then in the State Equalization Fund amounting to $97,608.50 and to require a like transfer of all future income of the State Equalization Fund until a total of $100,000 had been trans-

ferred. "All this without regard to the distribution or earmarking of funds as provided for in the State Equalization Statute." The respondents in the lower court appeal and therefore become the appellants in this court.

The State Hail Insurance Fund was established by chapter 160, Session Laws N. D. 1919. The fund was created by levying a flat tax on every acre of tillable land in this state. The fund is administered by the Hail Insurance Department of the state which was established for the purpose of furnishing indemnity against damage to growing agricultural crops by hail. Chapter 160 was amended by chapter 77, N. D. Session Laws 1921, which created a permanent surplus in the Hail Insurance Fund and allocated the proceeds of the flat tax to such permanent surplus.

The State Equalization Fund was originally created by chapter 229, N. D. Session Laws 1933, for the purpose of furnishing financial assistance by the state to certain schools and school districts. $200,000 was transferred to this fund by general appropriation.

Chapter 260, N. D. Session Laws 1935, amended the 1933 Act and re-established the State Equalization Fund. Chapter 155, N. D. Session Laws 1935, is an act reducing, defining and limiting the permanent surplus fund of the State Hail Department to $3,000,000 and transferring all moneys in excess of $3,000,000, namely, $1,038,865.41 to the State Equalization Fund. The constitutionality of this transfer was upheld in State ex rel. Sathre v. Hopton, 66 N. D. 313, 265 N. W. 395. Chapter 227, N. D. Session Laws 1937 amended and re-enacted the provisions of the Equalization Fund Law and again re-established such fund. All moneys in the Equalization Funds of 1933 and 1935 were transferred to the re-established Equalization Fund. The Sales Tax Act passed at the same session (N. D. Sess. Laws 1937, chap. 249) provided for the transfer from the Retail Sales Tax Fund to the State Equalization Fund of a sum not to exceed $3,500,000. In 1938, $38,865.41 was paid to the Hail Insurance Fund from the State Equalization Fund under the provisions of chapter 30, N. D. Session Laws 1937.

The legislative assembly by chapter 209, N. D. Session Laws 1939, again "created a fund to be known as the State Equalization Fund" and provided that "all monies now in the State Equalization Fund as

it was created by chapter 227 of the Laws of 1937, are hereby transferred to and shall become a part of the State Equalization Fund as hereby re-created." This law then allocated certain sums for specific types of school aid including the matching of certain Federal grants and indicated the order of preference to moneys under the various provisions of the act as follows:

Sec. 2. "First, the amount of money appropriated by the legislature for correspondence work for the biennium or so much thereof as may be necessary, accruing to the State Equalization Fund shall be expended by the State Board of Higher Education for high school work by correspondence."

Sec. 3. "After setting aside the sum hereinbefore required for high school correspondence work, the amount of money appropriated by the legislature for vocational education for the biennium or so much thereof as may be necessary shall be expended by the State Board of Higher Education in accordance with the following provisions. . . .

Sec. 4. "$250,000, or such portion thereof as may be necessary, accruing to the State Equalization Fund in each fiscal year from July 1st to June 30th inclusive shall be allocated and set aside as an emergency fund to aid financially distressed schools in the manner hereinafter set forth. . . .

Sec. 5. "After setting aside the sums hereinbefore required for high school correspondence work and for vocational training, there shall be paid out of said State Equalization Fund to each public school district in this state. . . .

Sec. 6. "After the payment for high school tuition and other proper charges against the fund have been provided for, there shall be paid from said Equalization Fund to the public school districts and county agricultural and training schools of the state. . . .

Sec. 9. "After the payments, and distributions hereinbefore provided, the remainder of the State Equalization Fund or so much thereof as may be necessary, shall be distributed to the school districts of the state on a per-pupil basis. . . ."

"The amount of money appropriated by the legislature" referred to in these paragraphs, refers to chapter 29, N. D. Session Laws 1939, which reads as follows:

"There is hereby appropriated out of any monies in the State Treas-

ury, not otherwise appropriated, the sum of $4,510,000.00 or so much thereof as may be necessary to make the payments provided for under the State Equalization Fund Law as provided for in Senate Bill No. 237 as passed by the 1939 Session of the Legislature for the biennium beginning July 1, 1939, and ending June 30, 1941, provided, however, that payments authorized for the school year ending on or about June 1, 1941, may be made from this fund up to October 1, 1941, to-wit:

(1) High school correspondence work ..............$  100,000.00
(2) Vocational education : ......................  40,000.00
(3) Emergency fund ............................  500,000.00
(4) Non-resident high school tuition ...............  1,100,000.00
(5) Teacher unit payment .......................  1,770,000.00
(6) Per pupil payment .........................  1,000,000.00

$4,510,000.00"

Up to this point it seems clear that these two acts, chapter 209 and chapter 29, are in perfect harmony. Chapter 29 appropriates moneys from the State Treasury to the State Equalization Fund for six specific purposes. Chapter 209 specifies the order of preference of these purposes as to moneys in the fund. A note of dissonance, however, is injected into the harmony apparently created by the two enactments that we have just discussed by chapter 41, N. D. Session Laws 1939. It provides: "There is hereby appropriated out of the State Equalization Fund, the sum of one million dollars (the sum of thirty-eight thousand, eight hundred and sixty-five dollars and forty-one cents, '$38,865.41' having been paid out of said fund July 15th, 1938) for the purpose of returning said sum to the State Hail Insurance Fund, the said sum having been diverted from said State Hail Insurance Fund to said State Equalization Fund by chapter 155 of the Session Laws of North Dakota for 1935; and it shall become the duty of the proper officers, upon the taking effect of this act, to transfer from and to pay from said State Equalization Fund to said State Hail Insurance Fund, the sum of one million dollars in ten equal, annual installments, the first installment to be paid July 15th, 1939."

It is the contention of the Insurance Commissioner that the installment of $100,000 provided by chapter 41, to be paid July 15, 1939, is a preferred claim against the State Equalization Fund and takes pre-

cedence over the items of expenditure from the fund provided by chapters 209 and 29. The appellants who were the respondents in the mandamus proceeding below, contend that the allocations for school purposes take priority over the appropriations to the Hail Insurance Fund and that this appropriation becomes effective only if at the close of the biennium there remains in the Equalization Fund a balance after payment of the various sums appropriated for school purposes under the six subdivisions noted in chapters 29 and 209.

The Insurance Commissioner points to the provisions of chapter 41 designating the appropriation as being for the purpose of returning to the Hail Insurance Fund a sum diverted therefrom to the Equalization Fund and specifically designating the date of payment, July 15, 1939, as indicative of a legislative intention that the appropriation to the Hail Insurance Fund should be paid first. The appellants point to the recital in chapter 209 that "First, the amount of money appropriated by the Legislature for correspondence work" shall be paid, followed in order by the five other school aid allocations, and to § 13 of said chapter which provides, "If at the close of any biennium the amount remaining on hand in said Equalization Fund exceeds $100,-000, the amount in excess of such sum shall be converted into the General Fund of the State of North Dakota. *The appropriations and allocations made herein shall be a first charge and claim upon and against all monies appropriated and coming into the fund hereby created* in the order in which said appropriations and allocations are set forth herein." (Italics supplied.) It is argued that these provisions indicate an intention on the part of the legislature to give priority to the appropriations for school purposes.

We find no direct authority upon the question involved. It is a matter of statutory construction to be determined through ascertainment of the legislative intent. The 1939 Acts were passed near the close of the legislative session and signed by the Governor after adjournment. Nothing appears in the record of enactment to give one precedence over the other. They must be treated as contemporaneous. It, therefore, becomes necessary to determine what was in the minds of the legislature when these laws were enacted. The Equalization Fund was established as a school aid fund. While the method of distribution of the

fund has been altered from time to time the single purpose has remained. It was created because of the dire need of the schools for state assistance. This need was as great, if not greater, at the time of the 1939 legislative session as it was in 1935 when the legislature transferred any excess of $3,000,000 from the permanent fund of the Hail Insurance Department to the State Equalization Fund. Money for the Equalization Fund was certainly no more readily obtainable in 1939 than it was in 1935. Thus the economic situation of the state and its school districts at the time of the enactment of the laws in question was not such as to lead us to believe that the legislature intended to change its previous policy with respect to the two funds. It had previously transferred the excess surplus in the Hail Fund to the Equalization Fund for the aid of the schools. In the absence of a clearly expressed intention to do so, we cannot assume that in 1939 the legislature reversed its policy and depleted the Equalization Fund to replenish the Hail Fund. The controlling features of this lawsuit, however, do not develop from the economic situation of the state or the general policy of the legislature. We merely mention them as indicative of the legislative intention. The first section of chapter 209 transfers all the money in the old State Equalization Fund to the new one created by that chapter. The testimony shows this to be the sum of $97,608.50. Chapter 209 became effective July 1, 1939. Thus on that date the new fund began its existence with the above sum. Chapter 29 appropriated to the State Equalization Fund $4,510,000.00 for the six items therein specified, being the same items for which chapter 209 provides the order and method of expenditure. Chapter 29 is entitled, "An act making an appropriation to pay for a portion of the current operating expenses of our public school system as provided for in the State Equalization Fund Law, as provided for by Senate Bill No. 237 as passed by the 1939 Session of the Legislature." Chapter 209, which is Senate Bill No. 237, is entitled, "An act to provide for the creation of the State Equalization Fund; providing for its distribution in the payment of costs of correspondence work, costs of vocational education, high school tuition and in the payment of direct aid to school districts upon a teacher-unit and per pupil basis and providing for the distribution of an emergency fund and to provide methods for the ascertain-

ment and payment of the sums payable to school districts; and to provide for penalty for making false reports; repealing chapter 227 of the Session Laws of 1937 and all acts or parts of acts in conflict therewith." These two acts taken together establish and provide the funds for the State Equalization Fund. Neither of these titles mentions any payment to the Hail Insurance Fund. This notable omission is an indication that it was not the primary purpose of the legislature to provide by these acts for the reimbursement of the Hail Insurance Fund. However, the legislature was not unmindful of the fact that in 1935 it had transferred money from the Hail Fund to the Equalization Fund. It did not inadvertently enact chapter 41 appropriating to the Hail Insurance Fund the sum of $1,000,000 in installments of $100,-000 annually. But it did not intend that such payments should be made until the amounts appropriated for aid to the schools had been paid. This is clearly indicated by § 13 of chapter 209, wherein it is provided that the appropriations and allocations to the schools *"shall be a first charge and claim"* upon all moneys coming into the Equalization Fund. That section also provides that any amount remaining on hand in the Equalization Fund up to and including $100,000 at the end of any biennium, shall not revert to the general fund. Only the amount in excess of $100,000 shall so revert. It is upon this remaining amount not exceeding $100,000 that chapter 41 operates. Until this has been determined to be an excess over and above the six items provided for the schools, there is no money which chapter 41 can appropriate to the Hail Fund. We have not overlooked the provisions of this chapter that the first installment be paid July 15, 1939. This is a provision which is inconsistent with the provisions of chapter 209 giving precedence to the state school fund. In view of the definite provisions of chapter 209 giving precedence to the school fund, the failure to mention the Hail Insurance Fund in its title and the provisions of § 13 which make available at the end of the biennium the amount remaining on hand as an amount upon which chapter 41 may operate, we must resolve the inconsistency in favor of the school appropriations and hold that no moneys can be transferred from the Equalization Fund to the Hail Insurance Fund until the specific appropriations for school purposes have been disbursed. The writ of mandamus is denied and the re-

straining order against disbursements of the State Equalization Fund by the defendants is vacated.

Reversed.

NUESSLE, Ch. J., and BURKE, BURR, and CHRISTIANSON, JJ., concur.